IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 2:20cr106

DANIEL CARRINGTON,
         Defendant.

## OPINION

The defendant Daniel Carrington moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. (ECF No. 110.) Carrington seeks a new trial based on newly discovered evidence that the Chesapeake Police Department ("CPD") investigated a police officer who testified against Carrington. The investigation dealt with the officer's alleged lies to his supervisor about purchasing gas. Carrington contends that this new evidence points towards the officer's untruthfulness as a witness, thereby warranting a new trial. Carrington also argues that the government's failure to disclose this evidence before trial violated his Fifth and Sixth Amendment rights.

The Court will deny the motion. The newly discovered evidence (1) merely constitutes impeachment evidence; (2) does not materially relate to the issues involved in Carrington's case; and (3) would not probably produce an acquittal. Carrington has suffered no constitutional injury because the government did not learn of the CPD's investigation into the officer until months after Carrington's trial ended, and the new evidence offers little, if any, probative value to Carrington's case. The Court will, therefore, deny Carrington's motion for a new trial.

## I. FACTS

A grand jury indicted Carrington on five drug-related charges.[1] (ECF No. 17.) Carrington's trial commenced in May 2021, (ECF No. 60, at 1), during which four cooperating witnesses who either were directly involved in Carrington's drug trafficking conspiracy or used Carrington as their drug supplier testified against him, (ECF No. 121, at 1, 8). The government also introduced dozens of exhibits and recordings to support its case, including several video and phone recordings of Carrington setting up, participating in, and discussing three sales of fentanyl. (*Id.* at 8–9.) Moreover, at least seven law enforcement personnel testified at Carrington's trial. (*Id.* at 9.) A jury ultimately found Carrington guilty of all five counts. (ECF No. 70.)

On September 30, 2021, the government filed a Notice of Information disclosing new evidence that the Chesapeake Chief of Police ("the Chief") had recently fired one of the testifying officers for lying to his supervisor. (ECF No. 93, at 2.) Specifically, CPD leadership found that in March 2021 the officer falsely told his supervisor that another Sergeant agreed to reimburse him with CPD funds for gas he had purchased using his personal credit card. (*Id.*) Although the supervisors raised the issue to the CPD's Ethics and Conduct Unit in late April 2021, neither the government nor the officer knew this at the time of Carrington's trial in May 2021. (*Id.* at 2–3.) The Chief subsequently found that the officer lied to his supervisor and, as a result, dismissed him from the CPD on August 19, 2021. (*Id.* at 2.) The officer immediately appealed his firing. (*Id.*)

After learning about the officer's dismissal, the government disclosed this information to the Court on September 30, 2021. (*Id.*) Based on this newly discovered evidence, Carrington filed

---

[1] Carrington faced the following charges: conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute heroin, fentanyl, and acetyl-fentanyl (Count One); distribution of fentanyl and acetyl-fentanyl resulting in death (Count Two); and distribution of fentanyl (Counts Three through Five). (ECF No. 17.)

2

a motion for a new trial on December 29, 2021. (ECF No. 110.) On January 28, 2022, however, the government submitted a supplemental memorandum explaining that the City ruled in the officer's favor on the appeal. (ECF No. 131, at 1.) Consequently, the CPD withdrew its finding that the officer had lied to his supervisor. (*Id.*) The City's records now reflect that the officer resigned, and he now qualifies as eligible for rehire. (*Id.*)

## II. DISCUSSION

Carrington seeks a new trial based on the newly discovered evidence relating to the CPD's investigation into the officer. He argues that the investigation shows the officer's untruthfulness as a witness, thereby warranting a new trial. Carrington also contends that the government's failure to disclose this information before trial violates his Fifth and Sixth Amendment rights.

### A. *Motion for New Trial Because of Newly Discovered Evidence Analysis*

#### 1. *Legal Standard*

To obtain a new trial based on newly discovered evidence, a criminal defendant must show (1) that he or the government discovered the evidence after trial; (2) that he exercised due diligence; and that the evidence (3) constitutes more than merely cumulative or impeachment evidence, (4) materially relates to the issues involved, and (5) would probably produce an acquittal. *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993). The Fourth Circuit has "never allowed a new trial unless all five elements were established." *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010) (quoting *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001)). The Fourth Circuit has recognized, however, that a defendant need not satisfy the five-element requirement "[i]f the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had

3

lied consistently in a string of previous cases." *Custis*, 988 F.2d at 1359 (quoting *United States v. Taglia*, 922 F.2d 413, 415–16 (7th Cir. 1991)).

### 2. *Analysis*

The government concedes that Carrington discovered the evidence after trial and exercised due diligence. Thus, the only remaining issues concern whether the evidence constitutes more than impeachment evidence; materially relates to the issues involved; and will likely produce an acquittal at trial—or, alternatively, whether the *Custis* exception applies. *See id.*

#### a. *Merely Impeaching*

First, Carrington fails to show that the newly discovered evidence constitutes more than mere impeachment evidence. "[N]ew evidence going only to the credibility of a witness is not sufficient to justify the granting of a new trial." *United States v. Stockton*, 788 F.2d 210, 220 (4th Cir. 1986). In *Robinson*, a jury found Robinson guilty of various firearms and drug charges. 627 F.3d at 946. After trial, four officers involved in Robinson's case either resigned or were dismissed after an investigation revealed that they had mishandled physical evidence in multiple unrelated cases. *Id.* at 946–47. Robinson subsequently moved for a new trial, arguing that since the officers handled the physical evidence in his own case, "evidence of their [past] improprieties transcends mere impeachment and goes to the core of the government's case." *Id.* at 948–49. The Fourth Circuit disagreed. *Id.* at 949. Instead, it concluded that "the officers' misconduct, while serious, did not relate to Robinson's case or to the truth-finding function of the criminal proceeding," and, therefore, did not warrant a new trial. *Id.*

Here, Carrington similarly argues that the investigation into the officer does not constitute mere impeachment evidence because it "goes directly to the most critical issues pertaining to the charges against [him]." (ECF No. 111, at 5.) But as in *Robinson*, no relation exists between

4

Carrington's case and the alleged misconduct. In fact, the CPD has since withdrawn the finding that the officer lied. Moreover, Carrington fails to articulate how the investigation relates to any substantive issue in his case. Instead, he merely focuses on how the investigation affects the officer's veracity as a witness. Thus, Carrington has not shown that the newly discovered evidence constitutes anything but impeachment evidence.

### b. Immaterial

Second, the newly discovered evidence does not materially relate to the issues involved. "A defendant satisfies the materiality prong by showing that the evidence was 'material to the issues involved.'" *United States v. Moore*, 709 F.3d 287, 293 (4th Cir. 2013) (quoting *Robinson*, 627 F.3d at 948)). In addition, the newly discovered evidence must be "more than merely . . . impeaching" to qualify as "material." *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007) (quoting *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001)) (alteration in original). Even if the CPD had not withdrawn its finding that the officer lied to his supervisor, his conduct in an unrelated matter has no bearing on the substantive aspects of Carrington's case and provides nothing more than an *ex post facto* opportunity to impeach the officer's credibility. The newly discovered evidence, therefore, does not materially relate to the issues involved.

### c. Unlikely to Produce an Acquittal

Third, Carrington has not demonstrated that the newly discovered evidence would probably produce an acquittal. The Fourth Circuit has repeatedly denied motions for a new trial where the government presented other evidence at trial that strongly weighed against the defendant. *See Robinson*, 627 F.3d at 950–51 (finding that evidence of officer misconduct in unrelated cases would not likely produce an acquittal given "the impressive amount of evidence against [the

defendant] from other sources"); *Custis*, 988 F.2d at 1360 (finding an acquittal unlikely in light of the substantial testimony offered by other investigating officers and the defendant himself).

As to Counts One and Two, the overwhelming evidence against Carrington greatly dilutes the importance of the officer's testimony. For example, four cooperators who either directly participated in Carrington's drug trafficking conspiracy or purchased drugs from Carrington testified against him. Furthermore, at least six other law enforcement officials testified against Carrington, and the government presented dozens of exhibits and recordings to prove Carrington's guilt on these counts.

Carrington similarly fails to show that the newly discovered evidenced would probably lead to an acquittal of Counts Three through Five. The government presented numerous recordings of Carrington setting up, conducting, and discussing three controlled buys of fentanyl for which the jury convicted him. And despite Carrington's attempts to impeach the officer by asking him why he repeatedly used a deficient recording device during the three controlled buys, the jury still convicted Carrington of these counts. Thus, the newly discovered evidence will not probably lead to an acquittal at trial.

### B. Constitutional Claims Analysis

Carrington also argues that the government's failure to disclose the investigation violates his Fifth Amendment right to due process and his Sixth Amendment right to confront witnesses. As discussed below, neither argument has merit.

#### 1. *Fifth Amendment*

Carrington asserts that the government's failure to disclose the CPD's investigation violates his Fifth Amendment right to due process. A due process violation arises if the government fails to produce exculpatory evidence material to a defendant's guilt. *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Agurs*, 427 U.S. 97, 107 (1976) (noting that failure to produce "*Brady* material" violates "the Due Process Clause of the Fifth Amendment"). A defendant makes a successful *Brady* claim by "show[ing] that the undisclosed evidence was (1) favorable to him either because it is exculpatory[] or . . . impeaching; (2) material to the defense . . . ; and (3) that the prosecution had materials and failed to disclose them." *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010) (quoting *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001)). Because the government did not learn of the investigation into the officer until months after Carrington's trial ended, no failure to disclose occurred. Carrington, therefore, suffered no due process injury.

### 2. Sixth Amendment

Carrington also argues that the government violated his Sixth Amendment right to confront witnesses. The Sixth Amendment's Confrontation Clause guarantees all criminal defendants to confront the witnesses against him, specifically via cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). When seeking to impeach a witness's veracity, a criminal defendant may cross-examine the prosecution's witness about specific instances of past conduct "if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608. But when the evidence has limited "probative value" or is "peripheral to the question [the witness's] credibility," no Sixth Amendment violation occurs. *United States v. Hill*, 322 F. 3d 301, 305 (4th Cir. 2003).

Here, the investigation offers little, if any, probative value about the officer's credibility because the CPD ultimately withdrew its finding that he lied to his supervisor. Thus, no Sixth Amendment violation occurred.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Carrington's motion for a new trial. (ECF No. 110.) The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 5 April 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

8